UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lulie Senbeta,  Civil No. 12-1793 (DWF/FLN)

          Plaintiff,

v.  **MEMORANDUM
OPINION AND ORDER**

Alejandro Mayorkas, Director,
U.S. Citizenship and Immigration
Services; and Janet Napolitano, Secretary,
Department of Homeland Security,

          Defendants.

_____

Marc Prokosch, Esq., Karam & Associates, counsel for Plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, United States Attorney's Office; and Aaron S. Goldsmith and Durwood H. Reidel, U.S. Department of Justice, Office of Immigration Litigation, counsel for Defendants.
_____

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment brought by Defendants Alejandro Mayorkas, Director, U.S. Citizenship and Immigration Services ("USCIS"), and Janet Napolitano, Secretary, Department of Homeland Security ("Secretary") (Doc. No. 8). For the reasons set forth below, the Court grants Defendants' motion for summary judgment, but denies the motion in all other respects.

## BACKGROUND

Plaintiff Lulie Senbeta ("Plaintiff"), a citizen of Ethiopia, is an asylee and applicant to adjust her status to that of a Lawful Permanent Resident ("LPR"). (Doc. No. 1, Compl. ¶¶ 4, 7; Doc. No. 11, Ex. 1 ("Canaan Decl.") ¶ 3.) Plaintiff was admitted to the United States as a nonimmigrant student on February 24, 1994. (Canaan Decl. ¶ 3.) Plaintiff was granted asylum status on March 22, 2000. (*Id.* ¶ 4.) Plaintiff's asylum claim and adjustment of status application included information indicating that she was affiliated with the Oromo Liberation Front ("OLF") in Ethiopia. (*Id.* ¶ 13.)[1] In particular, in her asylum application, Plaintiff indicated that she supported the OLF by contributing money, fundraising, and participating in meetings. (*Id.*) Plaintiff also indicated that she was actively involved with the Oromo Youth Organization from 1991 through the first half of 1992. (*Id.*)

Plaintiff filed an application to adjust her status from asylee to lawful permanent resident on August 20, 2001 (the "Application"). (*Id.* ¶ 5.) The Federal Bureau of Investigation ("FBI") completed Plaintiff's name check on January 14, 2003. (*Id.* ¶ 11.) The USCIS denied Plaintiff's application on February 18, 2008, due to her being inadmissible on terrorist-related grounds. (*Id.* ¶ 21.)

---

[1] USCIS has determined that the OLF falls within the definition of a Tier III undesignated terrorist organization, as defined in the Immigration and Nationality Act. *See* 8 U.S.C. § 1182(a)(3)(B)(vi)(III). (Canaan Decl. ¶ 15.)

In December 2007, the Consolidated Appropriations Act ("CAA") amended the Secretary's authority to exempt certain terrorist-related inadmissibility grounds, specifically by expanding the Secretary's discretionary authority to exempt individuals and groups from certain terrorist-related inadmissibility grounds relating to Tier III organizations. (Canaan Decl. ¶ 18.) Subsequently, in a March 26, 2008 memorandum, USCIS issued guidance on the adjudication of cases involving terrorism-related inadmissibility, including the instruction that adjudicators withhold adjudication of cases where the applicant could benefit from a future exercise of the Secretary's discretionary exemption authority under the CAA. (*Id.* ¶ 20.)

On April 29, 2008, after its initial denial, Plaintiff's Application was reopened and placed on hold in accordance with the March 26, 2008 policy memorandum. (*Id.* ¶¶ 12, 21.)[2] On July 24, 2012, Plaintiff filed the instant action, seeking to compel USCIS to adjudicate her Application for lawful permanent residency. In particular, Plaintiff alleges that Defendants have violated the Administrative Procedure Act ("APA") by failing to timely adjudicate her Application. (Compl. ¶ 15.) On October 18, 2012, USCIS issued a request for Evidence, seeking further information regarding her affiliation with the OLF. (Canaan Decl. ¶ 28.) Plaintiff responded on October 31, 2012. (*Id.*)

Defendants now move to dismiss the present case for lack of subject matter jurisdiction and for failure to state a claim, or in the alternative, to enter judgment in

---

[2] Several exemptions have been issued to date, but none have benefitted Plaintiff in relation to her activities on behalf of the OLF. (Canaan Decl. ¶ 23.) To date, USCIS has not determined whether the OLF meets the qualifications of the exemption. (*Id.* ¶ 29.)

3

favor of Defendants and dismiss the case because existing case law and legal standards establish that the delay in processing the case is not, as a matter of law, unreasonable.

## DISCUSSION

### I. Motion to Dismiss

#### A. Subject Matter Jurisdiction

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the plaintiff has the burden to establish that jurisdiction exists. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). In deciding a motion to dismiss for lack of subject matter jurisdiction, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* If the Court finds that jurisdiction is not present, it must dismiss the matter. Fed. R. Civ. P. 12(h)(3).

Defendants argue that Plaintiff's Complaint should be dismissed because 8 U.S.C. § 1252(a)(2)(B)(ii), which relates to judicial review of discretionary decisions, deprives the Court of subject matter jurisdiction. That section provides:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) [asylum] of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).

The Secretary or Attorney General may, in their discretion, adjust to permanent residence status certain aliens admitted as asylees. 8 U.S.C. § 1159(b). The statute does

4

not mention a particular time frame within which USCIS must adjudicate applications for adjustment of status. Defendants assert that USCIS's decision to put Plaintiff's Application on hold pending a potential exemption is a discretionary decision, and therefore, outside this Court's jurisdiction to review. Plaintiff, however, argues that § 1252(a)(2)(B)(ii) does not preclude the Court's exercise of subject matter jurisdiction over Plaintiff's claim because Plaintiff is not seeking review of a decision to apply or not apply an exemption, but instead she is seeking review of the decision to place her Application on hold. Specifically, Plaintiff seeks to compel Defendants to act and issue a decision regarding her Application.

There is a division among district courts on the question of whether § 1252(a)(2)(B)(ii) strips courts of jurisdiction to consider claims that the government has unreasonably delayed the disposition of an adjustment application. *See Al–Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 932, 938 (D. Minn. 2011) (explaining that district courts across the country are divided, but noting that the "overwhelming majority" of district courts have concluded that § 1252(a)(2)(b)(ii) does not bar judicial review of claims alleging unreasonable delay in the disposition of applications of asylees associated with Tier III terrorist organizations). The court in *Al-Rifahe* addressed the division and concluded that § 1252(a)(2)(B)(ii) does not "provide[ ] blanket cover for USCIS'[s] decision to withhold adjudication of [a plaintiff's] application indefinitely." *Id.* at 932-33; *see also Al Jabari v. Chertoff*, 536 F. Supp. 2d 1029, 1035 (D. Minn. 2008) ("[T]he Attorney General has discretion over what a decision will be, but not over whether a decision will be made; the Attorney General does not have discretion to refuse

5

to exercise his discretion."). *But see Namarra v. Mayorkas*, Civ. No. 12-1792, 2013 WL 619777, at *6 (D. Minn. Feb. 20, 2013) ("the statutory grant of discretion to promulgate regulations governing *how* to make adjustment decisions necessarily carries with it the discretion to determine *when* those adjustment decisions will be made") (emphasis in original).

The Court concludes that § 1252(a)(2)(b)(ii) does not strip the Court of jurisdiction to consider Plaintiff's claim that the government has unreasonably delayed in the disposition of her Application to adjust her status to permanent resident. While the ultimate authority to grant or deny adjustment of status is unquestionably discretionary, the Court agrees with the reasoning and conclusion in *Al-Rifahe*— in particular that there is a non-discretionary duty to act on and process an application to adjust status to permanent resident. *See Al–Rifahe*, 776 F. Supp. 2d at 933 (citations omitted).

There being no jurisdictional bar, Plaintiff must put forth an affirmative basis for subject matter jurisdiction. The APA does not provide an independent basis for subject matter jurisdiction, however, "[i]t is black-letter law that federal courts have jurisdiction under [28 U.S.C.] § 1331 over suits against agencies seeking to enforce provisions of the APA." *Id.* at 934 (quoting *Ali v. Frazier*, 575 F. Supp. 2d 1084, 1088-89 (D. Minn. 2008) (concluding that § 1331 provides jurisdictional basis for APA claim of unreasonable delay in adjudicating naturalization application)). The APA further provides that federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ." *Al-Rifahe*, 776 F. Supp. 2d at 934 (quoting 5 U.S.C. § 706(1)). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to

take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("*SUWA*") (emphasis in original).[3] Here, the Court concludes that Defendants' obligation to act on Plaintiff's Application is a discrete agency action that Defendants are required to take, and that once an application for an adjustment of status is properly before USCIS, the agency has a non-discretionary duty to act on the application. *See, e.g.*, *Al-Rifahe*, 776 F. Supp. 2d at 935 (citing additional cases); *Al Sawad v. Frazier*, Civ. No. 07-1721, 2007 WL 2973833, at *3 (D. Minn. Oct. 9, 2007) (joining a "growing number of district courts in concluding that USCIS has a duty to adjudicate adjustment of status applications once they have been submitted and that the APA requires the applications to be adjudicated in a reasonable time").

For the above reasons, the Court concludes that it has jurisdiction to hear Plaintiff's case.

### B. Failure to State a Claim

Defendants also argue that Plaintiff's Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim. In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need

---

[3] The APA exempts from judicial oversight claims based on "statutes preclud[ing] judicial review" or "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(1) and (2).

not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

To state a claim for unreasonable delay under the APA, the delay must result in some harm to the plaintiff. *See SUWA*, 542 U.S. at 64. In her Complaint, Plaintiff alleges that she "has been unable to move forward with her life; has been deprived of her peace of mind; and deprived of important benefits, rights, and protections to which she would be entitled as a Lawful Permanent Resident of the United States." (Compl. ¶ 10.)

8

Defendants, however, assert that Plaintiff does not allege any prejudice to her by the hold on her Application, because, but for the hold, her Application would be denied.

While Plaintiff's allegations of harm are somewhat general, the Court must, on a motion to dismiss, construe all facts in the light most favorable to Plaintiff. The Court finds that Plaintiff has sufficiently alleged the required harm stemming from the delay. *See, e.g*, *Rambang v. Mayorkas*, Civ. No. 11-3454, 2012 WL 2449927, at *5 (D. Minn. June 27, 2012). Therefore, Defendants' motion to dismiss for failure to state a claim is denied.

## II. Motion for Summary Judgment

Defendants argue, in the alternative, that they are entitled to summary judgment because there is no dispute of material fact in this case and that the time spent processing Plaintiff's adjustment case is reasonable as a matter of law. Plaintiff argues that summary judgment in favor of Defendants is not warranted because there is a genuine issue of material fact regarding the relevant time period for purposes of calculating a delay and because the delay in adjudicating her Application is unreasonable as a matter of law.

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural

shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The Court employs a six-factor test to determine whether a delay is unreasonable under the APA:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Research and Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal citations and quotation marks omitted). The Court evaluates the *TRAC* factors below.

The first and second factors relate to the rule of reason governing the agency's decision-making process. *Id*. There is no congressionally mandated timetable at issue, and therefore the APA's "general reasonableness" standard applies to the second factor. *See* 8 U.S.C. § 1159(b), 1182(d)(3)(B)(i); 5 U.S.C. §§ 555(b), 706(1). *See also, e.g.*, *Irshad v. Napolitano*, Civ. No. 12-173, 2012 WL 4593391, at *11 (D. Neb. Oct. 2, 2012); *Rambang*, 2012 WL 2449927, at *6.

There is no dispute that Plaintiff filed her Application on August 20, 2001, and that the USCIS denied the Application on February 18, 2008. Plaintiff argues that the relevant time period is the nearly 11 years that passed between the time she filed her Application and the time she initiated this lawsuit in July 2012. Defendants submit that the relevant time period for calculating the reasonableness of the delay is from April 29, 2008, the date on which Plaintiff's Application was reopened and placed on hold, until the filing of the lawsuit in July 2012. The Court concludes that the relevant time period for calculating any delay is the time period between the re-opening of the Application and the filing of this lawsuit—a period of just over four years. *See, e.g.*, *Al Sawad v. Mayorkas*, Civ. No. 11-2923, 2012 WL 3238258, at *1-2, 5 (D. Minn. Aug. 7, 2012) (delay runs from the date application is reopened); *Rambang*, 2012 WL 2449927, at *7-8 (same).

Defendants further submit that the four-year delay is not unreasonable as a matter of law. In particular, Defendants contend that Plaintiff's Application is on hold because Congress enacted the CAA in 2008, and in response, USCIS issued a memorandum directing its adjudicators to place on hold certain adjustment cases that could potentially

benefit from a future exercise by the Secretary of her exemption authority. Defendants also describe the exemption procedure as being complex and potentially lengthy, and one that implicates national security. Finally, Defendants point out that it is taking active steps toward the adjudication of Plaintiff's Application, namely its October 2012 request for evidence and consideration of the same.

The Court concludes that the time spent processing Plaintiff's Application, thus far, is not unreasonable as a matter of law. Evidence in the record indicates that: the Secretary and other government officials have been exercising their discretionary authority and continue to consider additional exercises of USCIS's exemption authority; the process of making these determinations requires country by country assessments and analysis of the Tier III organizations at issue; and should it be determined that the OLF meets the qualifications for an exemption and Plaintiff is eligible, Plaintiff's Application will be removed from hold and USCIS will proceed with adjudication. (Canaan Decl. ¶¶ 27-29.) In addition, courts faced with similar facts have found similar delays to be reasonable. *See Debba v. Heinauer*, Civ. No 09-1540, 2010 WL 521002, at *3 (D. Minn. Feb. 16, 2010) (eight-year delay not unreasonable); *Rambang*, 2012 WL 2449927, at *6 (four-year delay not unreasonable).

Factors three and five are related and considered together. These factors concern the nature and extent of the interests affected by the delay, particularly as the effects of the delay involve Plaintiff's health and welfare. To this end, Plaintiff submits that she has experienced substantial prejudice resulting from Defendants' failure to adjudicate her Application. Specifically, Plaintiff claims that she "has been unable to move forward

12

with her life; has been deprived of her peace of mind; and deprived of important benefits, rights, and protections to which she would be entitled as a Lawful Permanent Resident of the United States." (Compl. ¶ 10.) Defendants assert that they have an interest in following the CAA and related policy. Defendants further assert that the hold actually inures to Plaintiff's benefit because Plaintiff would likely be denied a status adjustment without an exemption.

Defendants' interests must be weighed against the effect of further delay on Plaintiff's interests, particularly her health and welfare. While the Court acknowledges that Plaintiff has alleged hardship caused by the delay, such as the inability to move forward and the deprivation of her peace of mind, the Court concludes that those interests are outweighed by Defendants' interests in carrying out its congressional mandate and in carefully completing the exemption process in this terrorism-related inadmissibility case. Plaintiff admits to having been a member of the OLF, a group that warrants categorization as a terrorist organization under 8 U.S.C. §1182(a)(3)(B)(vi)(III). As explained above, the exemption process in terrorism-related cases is complex and potentially time-consuming. The harm Plaintiff argues she has suffered does not outweigh Defendants' interests in national security and in completing the exemption process in terrorism-related cases.

The fourth factor involves considering the effect of expediting the delayed action on other agency activities. Plaintiff asserts that USCIS does not possess unfettered discretion to relegate her Application to a state of limbo. Defendants, however, argue that the insistence upon expediting the adjudication of her Application directly interferes

13

with the USCIS's discretion.  As discussed above, Plaintiff's Application implicates issues regarding terrorism-related inadmissibility because of her admitted involvement with the OLF.  Defendants have persuaded the Court that expediting the delay would intrude into agency discretion.  The Court finds that this factor favors Defendants.

There is no dispute that Plaintiff's Application is on hold because, after the passage of the CAA, Plaintiff might benefit from a future exercise of the Secretary's discretionary exemption authority.  Even so, Plaintiff asserts that the delay in the adjudication of her Application arguably constitutes impropriety.  Here, there is no evidence that Defendants have acted with impropriety.  Thus, the sixth factor factor does not weigh in Plaintiff's favor.

Considering all of the above, and in light of the particular circumstances of this case, the Court concludes that a four-year delay in issuing a final decision on Plaintiff's Application is not unreasonable.  While acknowledging the real effects that the delay has had on Plaintiff, any harm to Plaintiff is outweighed by Defendants' substantial interests.  Despite its ruling today, the Court notes that, at some point, a continued delay by Defendants will become unreasonable.  *See, e.g.*, *Al-Rifahe*, 766 F. Supp. 2d at 937-38 (government not entitled to summary judgment where plaintiff's application pending for thirteen-years and a government memo lifted hold on plaintiff's application).  Thus, the Court strongly suggests that Defendants take affirmative and meaningful steps to move Plaintiff's Application forward.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss and for Summary Judgment (Doc. No. [8]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The motion for summary judgment is **GRANTED**.

2. The motion to dismiss is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: June 14, 2013
s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge